LORRAINE TUCKER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Tucker v. Commissioner
Docket No. 5842-78.
United States Tax Court
T.C. Memo 1979-449; 1979 Tax Ct. Memo LEXIS 73; 39 T.C.M. (CCH) 463; T.C.M. (RIA) 79449; November 13, 1979, Filed Oscar Nipper, for the petitioner. William T. Overton, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined deficiencies in petitioner's Federal income taxes of $694.41 for 1974 and $9,184.20 for 1975.Respondent also determined for 1975 an addition to the tax of $459.21 pursuant to section 6653(a). [1] Petitioner has conceded certain adjustmens, but four issues are presented for our decision: *74 (1) Whether petitioner may deduct all or an allocable portion of the rent, utility and telephone expenses for the building in which her grocery store business is located when she aalso has her personal living quarters there. (2) Whether the income of petitioner's drive-in grocery store was underreported because she did not reduce the cost of goods sold by the cost of food and other items she consumed during 1975. (3) Whether petitioner is entitled to deduct certain amounts as compensation paid to her son. (4) Whether petitioner is liable for the addition to tax under section 6653(a) for the year 1975. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, are incorporated herein by this reference. Lorraine Tucker (hereinafter petitioner) resided in Houston, Texas at the time she filed her petition. she filed her Individual Income Tax Returns for the taxable years 1974 and 1975 with the Director of the Internal Revenue Service Center, Austin, Texas. Starting in 1972 and during the years in issue petitioner operated Lorraine's Drive-In Grocery in Houston, Texas, as a sole proprietorship. *75 The drive-in grocery sold the kind of merchandise typically found in a small convenience store, including bread, milk, eggs, canned goods, cakes, cookies, beer, cigarettes, potato chips, sodas, candies and magazines. It was open seven days a week from six in the morning until eleven at night. Petitioner lived and slept in the rear of the building in which the grocery store was located. Her personal living quarters consisted of a bathroom, a bedroom, and a kitchen. The kitchen contained a refrigerator, a stove, a sink, a table, some chairs, a telephone and a closedcircuit television monitor. Petitioner used a surveillance monitor and a burglar alarm to protect against theft. The store was in an area where there was a constant threat of break-ins, and had been robbed five times. Petitioner's store had gross sales in 1974 of over $200,000 and in 1975 of over $227,000. On her 1974 Federal income tax return the petitioner reduced the store's cost of goods sold by $1,539, which represented the costs of food and other items consumed or withdrawn for her personal use. On her 1975 return she made no reduction in her cost of goods sold for any food items consumed or withdrawn for *76 personal use, even though she drank sodas and cokes, ate potato chips and other items, and withdrew general items for her personal use. During the years at issue the petitioner employed a woman to work as a cashier eight hours a day, six days a week. This employee earned $1,150.40 in the calendar quarter ended March 31, 1974. This amount was typical of what she earned in other quarters in 1974 and 1975. Petitioner's son, Jack T. Tucker, and his wife also assisted in the business. Mr. Tucker had previously worked for the Seven-Eleven chain of convenience stores for five years, rising from an assistant store manager to a supervisor of eight stores. In 1969, the last year he worked for Seven-Eleven, his salary was approximately $18,000. Between 1969 and 1973, he operated his own chain of convenience stores. Because petitioner had little or no prior experience in the grocery business, her son assisted by ordering and buying all groceries, calculating the retail prices, shelving the goods, taking inventory and doing the bookkeeping. His wife assisted in the bookkeeping by preparing daily cashier's reports and sales summaries and writing some of the checks to pay the bills. *77 On her 1975 Federal income tax return, petitioner claimed a deduction for compensation paid to employees, identified as "paid to associates", in the amount of $31,431. No part of the amount deducted in 1975 as "paid to associates" was reported on an Employer's Quarterly Federal Tax Return, Form 941, or an Employer's Annual Federal Unemployment Tax Return, Form 940, filed by Lorraine's Drive-In Grocery. Petitioner's accounting records are such that it is impossible to ascertain precisely when and to whom the $31,431 was disbursed. Some of the checks were made out and paid in 1974, and some in 1975.The checks represented either salary payments to Jack Tucker or cash advances to his trucking business, Tucker Transportation Ltd.
Tucker Transportation Ltd., a limited partnership, engaged in short hauling in the greater Houston area, and had its business offices in the rear of the building used by Lorraine's Drive-In Grocery. Mr. Tucker was the general partner and owned an 80 percent interest. The firm had originally been owned by petitioner in the form of a sole proprietorship called the Tucker Transportation Company. On her 1974 tax return, the petitioner claimed a net loss of *78 $6,663 from the trucking business on gross receipts of $38,024. On January 1, 1975, the limited partnership acquired all of petitioner's interest in the trucking enterprise. After January 1, 1975, she had no interest in Tucker Transportation Company or Tucker Transportation, Ltd. On its 1975 partnership tax return, Tucker Transportation, Ltd. reported a loss of $39,399 on gross receipts of $204,592. Jack Tucker's distributive shares of the loss was $31,519. The partnership return shows that $25,400 of salary and $5,561 of unreimbursed expenses were paid to Mr. Tucker. ULTIMATE FINDINGS OF FACT 1. Petitioner is entitled to deduct 90 percent of her rent, utility, and telephone costs as business expenses in 1974 and 1975. 2. Petitioner's cost of goods sold in 1975 should be reduced by $870 to cover the cost of food and other items she consumed in that year. 3. Petitioner is entitled to deduct, as ordinary and necessary business expenses, reasonable compensation paid to her son, Jack Tucker, in the respective amounts of $4,012.80 in 1974 and $12,950 in 1975. 4. Petitioner is liable for the addition to tax under section 6653(a) for 1975. OPINION Issue 1 -- *79 Rent, Utility and Telephone Expenses
The first issue is whether petitioner may deduct all the rent, utility and telephone expenses for the entire building in which her grocery store is located even though her personal living quarters occupy a portion of the building. Petitioner operated Lorraine's Drive-In Grocery, a small convenience-type grocery store located at the front of a one story building. In the rear of the building she had her living quarters which included a bathroom, a bedroom, and a kitchen. There she installed a closedcircuit television monitor that permitted constant surveillance of the store, which was in a high crime area and had been robbed five times. Petitioner believed it was important for someone to be on the premises at all times in order to protect the store. Petitioner contends that if she had not lived at the store it would have been necessary to employ someone to watch the store at night. Consequently, she asserts that the expenses of maintaining the entire premises were directly related to her business and are therefore deductible. Respondent, on the other hand, argues that there should be an allocation of the rent, utility bills and telephone *80 costs between the business portion, which is allowable under section 162, and the personal portion, which is not deductible by reason of section 262. Respondent determined that 15 percent of the expenses in 1974 and 19 percent in 1975 represent non-deductible personal expenses. We agree with respondent that some of the costs represent personal expenditures. However, we disagree with the allocation percentage figures respondent has aplied. Home lodging is generally personal in nature. Section 262 specifically provides that no deduction shall be allowed for personal, living or family expenses. Section 1.262-1(b)(3), Income Tax Regs. provides: Expenses of maintaining a household, including amounts paid for rent, water, utilities, domestic service, and the like, are not deductible. A taxpayer who rents a property for residental purposes, but incidentally conducts business there (his place of business being elsewhere) shall not deduct any part of the rent. If, however, he uses part of the house as his place of business, such portion of the rent and other similar expenses as is properly attributable to such place of business is deductible as a business expense. We think the *81 regulation is equally applicable to property rented for business purposes where a portion of it is used to maintain a household. Petitioner's store was closed from 11 at night until 6 in the morning during which hours she apparently retired to her living quarters. It was not essential to the business for petitioner to be on call all hours of the day and night. Although she may believe it was advantageous to remain on the premises at all times so she could watch the store, we are not persuaded by the evidence presented herein that the costs allocable to her living quarters should be characterized as ordinary and necessary business expenses. She had a burglar alarm. The closed circuit television monitor would have worked just as well if it had been located in an apartment nearby rather than in the back of the store. The these circumstances we hold that a portion of the disputed expenses represents nondeductible personal expenses. On the basis of the evidence presented we have found and conclude that 90 percent of the premises was used for business purposes and 10 percent for personal household purposes. Issue 2 -- Reduction in Cost of Goods Sold for Food and Other Items
*82 The second question is whether the income of petitioner's drive-in grocery store was understated in 1975 because she did not reduce its cost of goods sold by the cost of food and other items she consumed during that year. On her 1974 Federal tax return the petitioner reduced the cost of goods sold by $1,539, the amount she specified in the return as representing the cost of groceries and other items consumed or withdrawn for her personal use. On her 1975 return she made no reduction for items so consumed. When questioned as to how she arrived at the $1,539 amount for 1974, petitioner testified, "I have no idea where that number came from." But she did testify that in 1975 she consumed potato chips, sodas and cakes from her inventory and estimated the cost of goods withdrawn for her personal use to be between $10 and $15 per week Using our best judgment, we hold that she consumed or withdrew for her personal use $15 of goods per week in 1975. Cohan v. Commissioner,39 F.2d 540, 544 (2d Cir. 1930). Accordingly, petitioner should have reduced her cost of goods sold by $780 in that year. Issue 3 -- Claimed Compensation Paid to Son
The third question presented *83 is whether petitioner is entitled to deduct certain amounts as compensation paid to her son in 1974 and 1975. Section 162(a)(1) provides that there shall be allowed as a deduction all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. The test for the deductibility of alleged compensation is two-pronged: (1) whether the payment was actually intended to be purely for services, and (2) whether the payment was reasonable for the services actually rendered. Section 1.162-7, Income Tax Regs; Electric & Neon, Inc. v. Commission,56 T.C. 1324, 1340 (1971), affd. 496 F.2d 876 (5th Cir. 1974); Paula Construction Co. v. Commissioner,58 T.C. 1055, 1058 (1972), affd. 474 F.2d 1345 (5th Cir. 1973). Whether such intent has been established is a factual question to be decided on the basis of the particular facts and circumstances of the case. Paula Construction Co. v. Commissioner,supra at 1059. On this record we conclude that a portion of the *84 $31,431 petitioner paid in 1974 and 1975 represented compensation to her son, Jack Tucker, for services actually rendered in the grocery store business. When petitioner started her business, she had little experience in such operations.By contrast, her son had five years of experience with the Seven-Eleven grocery store chain in which he rose from an assistant manager of one store to a supervisor of eight stores. He also managed his own chain of convenience-type small grocery stores before that venture ended in bankruptcy. Jack Tucker worker for his mother by doing all the ordering and buying for the store, calculating the mark-up from cost to retail, putting the groceries and merchandise on the shelves, inventorying the store and doing the bookkeeping. His wife also assisted in the bookkeeping by preparing the daily cashier's reports, the sales summaries and writing checks to pay the bills. Although petitioner did not pay her daughter-in-law for her work, we think part of the checks made out to Jack Tucker were attributable to work performed by his wife. Petitioner testified that Jack worked almost every day except Sundays in the store -- sometimes one hour, sometimes ten hours *85 per day. Without her son's knowledge, experience, and assistance petitioner would most likely not have been able to carry on the operations of the store. We note that Jack Tucker ran his trucking business out of the back of his mother's store. It seems entirely reasonable that he was there much of the time to assist her in the store. As petitioner testified, "If I needed him, I hollered." Mr. Tucker testified that he worked 45 to 50 hours per week for his mother and his wife worked another 12 to 18 hours per week in the store. The figures may be inflated, but we do not doubt that Mr. Tucker and his wife performed significant services at the store. We find that petitioner intended to compensate her son for the services rendered at the drive-in grocery store.The questions then arise, how much of the $31,431 petitioner deducted as "paid to associates" properly represented a business expense deductible under section 162(a)(1), and in what year were such deductible payments made? A portion of the money petitioner deducted as "paid to associates" was in fact cash contributions for her son's trucking business.Tucker Transportation Ltd. was not a financial success in 1975. Its *86 partnership return for that taxable year shows an ordinary loss of $39,399. Petitioner made periodic cash advances to the trucking firm to keep it financially afloat. One check for $600 was specifically made out to "Tucker Transportation." Another check for $580 was made out simply to "cash" and included the notation "payroll loan" on the face of the check. With respect to the $600 check, petitioner admitted on direct examination to advancing money to her son. With respect to the $580, she testified that her son "must have needed this money to make his payroll…." Some of the payments were for salary. A number of checks made out to Jack Tucker were in the amounts of $350 and $364.80. These checks were made at regular intervals throughout the years in issue, generally four times per month. We think some of these checks represented deductible salary payments to Mr. Tucker for his services in the grocery store while the remainder representated nondeductible cash advances to his unprosperous trucking business. [2]
*87 While petitioner claimed the entire $31,431 deduction for the year 1975, an analysis of the checks and financial schedules introduced into evidence indicates that a significant portion of the checks, including those for Jack Tucker's salarly, were made out and paid in 1974. Although Mr. Tucker and his wife did the bookkeeping and the data processing firm of petitioner's counsel did the quarterly analysis, there is a dearth of clear accounting records. Nevertheless, after review of the financial evidence submitted, we find and hold that the petitioner paid to her son as salary the amounts of $4,012.80 in 1974 and $12,950 in 1975. Such amounts are deductible by the petitioner as reasonable compensation paid in those years. Issue 4 -- Addition to Tax under Section 6653(a)
The final issue is whether petitioner is liable for the addition to tax under section 6653(a) in 1975 for negligent or intentional disregard of the rules and regulations relating to income taxes. The addition to tax may be imposed where a taxpayer has failed to make, keep and maintain books of account or records from which either the amounts or the true nature of his income and deductions can be ascertained. *88 Zivnuska v. Commissioner,33 T.C. 226, 240 (1959). The taxpayer cannot avoid the duty to file accurate returns by shifting the responsibility to his bookkeeper. Bailey v. Commissioner,21 T.C. 678, 687 (1954). This is particularly true when the taxpayer neither takes precautions to prevent errors nor attempts to check to see that the books and records are being kept correctly. Leroy Jewelry Co. v. Commissioner,36 T.C. 443, 445-46 (1961). Even when a taxpayer's books are kept and his tax returns are prepared by a certified public accountant, he cannot escape responsibility for filing correct returns since the books are kept and the returns prepared on the basis of information supplied by the taxpayer. SoRelle v. Commissioner,22 T.C. 459, 489 (1954). The burden of showing that the underpayment of tax for the years in issue was not due to negligence or intentional disregard of the rules and regulations is on the petitioner. Marcello v. Commissioner,43 T.C. 168, 182 (1964), affd. on this issue 380 F.2d 499 (5th Cir. 1967); Axelrod v. Commissioner,56 T.C. 248, 258 (1971). *89 Petitioner has failed to meet her burden of proof on this issue. Petitioner offered no explanation or evidence with respect to item (a) in the statutory notice of deficiency. Item (a) referred to a deduction claimed in 1975 of $486 for bad debts. The deduction was disallowed because petitioner, a cash method taxpayer, did not establish that the items comprising the deduction were ever included in sales or even constituted debts arising from her trade or business. Another factor weighing in favor of the imposition of the addition to tax is that petitioner knew a substantial portion of the $31,431 she deducted on her 1975 return as "paid to associates" actually represented cash advances and payroll loans in 1974 and 1975 her son's trucking business. Her books and records did not clearly show to whom and when such amounts were disbursed. Even as to the portion which did represent a deductible salary expense, no part of the amount "paid to associates" was ever reported on an Employer's Quarterly Federal Tax Return, From 941, or on an Employee's Annual Federal Unemployment Tax Return, Form 940, filed by Lorraine's Drive-In Grocery. The third factor is petitioner's complete failure *90 to reduce her store's cost of goods sold by the cost of the food and other items she consumed in 1975 even though she had reduced her 1974 cost of goods by $1,539. Accordingly, we hold that the addition to tax was properly imposed for the taxable year 1975. To reflect the conceded issues and our conclusions with respect to the disputed ones, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue, unless otherwise indicated.↩
2. Petitioner made the following admission on direct examination: A In other words, your testimony is that it's more probable the checks that are written in amounts other than the $364.00 or $350.00 amount, were amounts that were not paid to Jack Tucker for his services?
A Right, right, they were-- Q They were paid to him for some other reason. A Right, to help him in his -- Q In his business. A --trucking business, right.↩