DAVID AXELROD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4063–69. Filed May 10, 1971.

*Solomon Axelrod*, for the petitioner.

*Robert H. Burgess*, for the respondent.

SCOTT, *Judge:* Respondent determined deficiencies in petitioner's income taxes for the calendar years 1964 and 1965 in the amounts of $199.43 and $1,678.61, respectively and additions to tax under section 6653(a), I.R.C. 1954,[1] for these respective years of $9.97 and $83.93.

Some of the issues raised by the pleadings have been disposed of by agreement of the parties leaving for our decision the following:

(1) Whether petitioner is entitled to a deduction for a casualty loss for the year 1965 for damage to his sailboat.

(2) Whether any part of petitioner's underpayment of tax for the years 1964 and 1965 was due to negligence or intentional disregard of the rules and regulations.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner who resided in Chicago, Ill., at the date of the filing of his petition in this case, filed individual Federal income tax returns for each of the calendar years 1964 and 1965 with the district director of internal revenue at Chicago, Ill.

Petitioner is a doctor of medicine. During the years here in issue he was engaged in the private practice of medicine in Chicago, Ill.

Sailing was a hobby of petitioner. In 1955 he bought a used wooden sailboat which at the time was approximately 9 years old. Petitioner paid $9,500 for the boat and immediately after purchase of the boat spent about $4,000 to rebuild it. Thereafter every year petitioner spent sums in repairing the boat. The boat needed constant repairs and petitioner has been holding it together "with spit and polish, so to speak." Petitioner does much of the repair work himself and in some years has bought as much as $1,500 worth of material for repair of the boat.

In 1965 petitioner took out an insurance policy on the boat with Reliance Insurance Co. The number of this policy is YL–23–76–36. Petitioner paid a premium of $329.96 for 1 year's insurance composed of $225 for the coverage of the "Hull," $54.96 for protection and indemnity for personal injury and property damage, including Harbor Workers Compensation insurance and medical payments, and $50 for

---

[1] All references are to the Internal Revenue Code of 1954.

coverage of Spars and Sails Racing Extension. The policy was for comprehensive insurance covering among other risks damage to the boat and personal liability of petitioner while sailing or racing the boat. The policy was actually delivered to petitioner on September 1, 1965, but the effective date of the coverage was August 13, 1965. The policy covered any loss to petitioner's boat from storm damage. The "Agreed Valuation and Amount of Insurance" of the hull as stated in the insurance policy was $12,500 which petitioner believed was the lowest amount he could carry on the hull.

In 1965 prior to obtaining this policy petitioner had changed his insurance company and acquired a new policy through a friend. After the policy was issued the company made an investigation and canceled the policy. Petitioner was of the opinion that the policy was canceled because he had a loss of a dinghy in 1964 for which he had made a claim. Thereafter petitioner had several insurance policies issued and canceled prior to obtaining policy No. YL-23-76-36 with Reliance Insurance Co., which policy he still had at the time of the trial of this case.

On August 27, 1965, petitioner's boat was 1 of 48 entered in a race. The weather was "very heavy." One boat went down and only 10 of the 48 boats entering the race finished it. Petitioner's boat was 1 of the 10 boats to finish the race. In 1966 when an Internal Revenue Service agent or auditor asked petitioner for some evidence of when his boat was damaged, petitioner obtained from George A. Quandee a handwritten statement which reads as follows:

*To Whom It May Concern:*

The writer is Commodore of Jackson Park Yacht Club and was a contestant in the Night Navigational Race in August 1965. The weather during this race was very foul with heavy seas and high winds. Such weather could very easily damage a sail boat particularly on a beat to windward which constituted over 30 miles of the course. Such damage is manifested by broken ribs, loosen plank fastenings and other structural hull damage. This will cause, unless repaired, undue leaking, consequently deterioration of the wood and thus further damage in a cycle.

Com. GEORGE A. QUANDEE
*9548 50th Court*

*Oaklawn, Ill.*

The writer of this statement had a Fiberglas boat entered in the race of August 27, 1965, which was one of the boats that dropped out of the race.

When petitioner's boat finished the race many planks were loosened, it had lost caulking between the seams, the fasteners were loosened in the hull, and the boat was in sinking condition. For 3 or 4 days petitioner kept a man aboard the boat to keep the pump going. Then peti-

tioner had the boat hauled out of the water and did some caulking to keep it in reasonably safe condition for the remainder of the season. The total cost of the repairs petitioner made on the boat in 1965 after the August 27th race was approximately $150. The amount of $150 was comprised of about $45 for lifting, about $40 paid to a carpenter who helped petitioner with the caulking, "bottom paint" purchased at about $12 a quart and some other materials brought down to the boat. In 1966 when petitioner's return for the year 1965 was being audited, the auditor for the Internal Revenue Service asked petitioner to get an estimate of the cost to refasten the damaged planks in the boat. At that time petitioner got an estimate from an man named "Tom" who ran the "River's End Marina." This estimate showed the following:

RIVER'S END MARINA, INC.

| Part No. | List |
| --- | --- |
| Screws | $35 |
| Caulking | 18 |
| Paint | 25 |
| Sandpaper and miscellaneous | 15 |

*Repair order—Labor instructions*

| | |
| --- | --- |
| Lift and relaunch | $80. 00 |
| Labor to sidetrack and cradle | 51. 00 |
| Refasten 800 ft. planking (160 hrs.) | 1, 360. 00 |
| Total labor | 1, 411. 00 |
| Total parts | 93. 00 |
| Crane—outside work | 80. 00 |
| Tax | 3. 72 |
| Total amount | 1, 587. 72 |

Petitioner never had the work shown in this estimate done but each year after 1965 continued as he had each year prior thereto to do work on the boat. Petitioner made no claim under his insurance policy with Reliance Insurance Co. for compensation for damage to his boat during the August 27, 1965, race.

Petitioner kept records of his patients and the fees collected from them and the expenses connected with his office such as salaries to nurses, medical supplies, rent, and equipment. However, he kept no records of his entertainment expenses, costs of attending medical meetings, convention expenses, dues to clubs and societies, telephone expenses for telephone calls made outside his office, and laundry expense, although on his Federal income tax returns for 1964 and 1965 he deducted items of business expenses listed under these categories. Petitioner did not maintain records of the amount of the business use

of his automobile although he deducted automobile expense for the business use of his automobile in both 1964 and 1965.

Petitioner on his 1965 income tax return claimed a deduction of $500 for a casualty loss because of storm damage to his sailboat. This amount was computed by subtracting $100 from the $600 which petitioner himself estimated was the damage to his boat during the August 27, 1965, race. Respondent in his notice of deficiency disallowed petitioner's claimed deduction with the explanation that petitioner had not established that any deductible loss was sustained during the taxable year. Respondent explained his addition to tax under section 6653(a) for each of the years 1964 and 1965 with the statement that it had been determined that part of the underpayment in tax for each year was due to negligence or intentional disregard of rules and regulations.

OPINION

Section 165(a) provides for the deduction of any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(c) provides for limitations on deductions of losses by individuals and paragraph (3) of that section lists as one of the allowable deductions by individuals losses of property not connected with a trade or business from fire, storm, shipwreck, or other casualty to the extent such loss exceeds $100.[2]

Both parties recognize that since petitioner's boat was in no way connected with his trade or business, any loss which was sustained in connection with the boat, if deductible at all, must be deductible as a casualty loss within the meaning of section 165(c)(3).

They apparently disagree, however, as to the precise issue presented for our determination. Petitioner apparently takes the position that we need only decide whether his claimed casualty loss was compensated for by insurance. Respondent does not agree that the issue presented has been so limited. Therefore, the first question which we are called upon to decide is whether on the record in this case our determination should be limited to whether petitioner's claimed loss was compensated for by insurance.

---

[2] SEC. 165. LOSSES.

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \* \*

(c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—

\* \* \* \* \* \* \*

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. \* \* \*

In his opening statement, petitioner, after having discussed an issue which was later disposed of by the parties by agreement, limited his comments on petitioner's claimed deduction for a casualty loss to his boat to the following:

There is another feature which we are going to stress, and that was a loss—a casualty loss to a boat. We claim five hundred dollars casualty loss, and although we, at the time, were covered by insurance, no claim was filed. Again, the revenue agent disallowed it because they claim that this was an insurable loss, and we weren't entitled to it. And we contend it is a personal proposition, and whether insurance was then in existence or whether it was a claim which wasn't pursued by the taxpayer, that he shouldn't be penalized in disallowing this claim.

Respondent's counsel when asked if he cared to make an opening statement replied, "No."

Petitioner in his statement of facts and argument in his brief, under the heading, "The Casualty Loss in 1965 by Storm," states as follows:

That on August 27th, 1965, this Boat was damaged by a Storm, while on the Lake, and that the damage claimed by Petitioner, under Sec. 165 (a) was $600.00 less the $100.00 for each casualty or $500.00. From the evidence adduced at the trail, [sic] more than this damage was sustained and proven.

The respondent disallowed this claim on the general Rule that said loss was not a loss, "not compensated for by insurance or otherwise," as provided in Sec. 165 (1954 Code) (a).

Petitioner then proceeded to argue whether within the meaning of section 165(a) any loss to his boat was compensated for by insurance or otherwise.

Respondent in his opening brief states the issue to be whether petitioner on August 27, 1965, "suffered a casualty loss under section 165 (c)(3) of the Internal Revenue Code of 1954 not compensated for by insurance in the amount of $600.00 from alleged storm damage to his boat." Respondent then states his contention to be that petitioner is not entitled to the $500 claimed casualty loss deduction because he has failed to establish the amount of the loss and further because any such loss was covered by insurance and therefore is not deductible as a casualty loss under Code section 165(c)(3).

The first portion of respondent's argument with respect to petitioner's claimed casualty loss is that petitioner has failed to prove either the fair market value of the boat before or after the casualty or to offer any other adequate proof of the amount if any of the casualty loss he sustained. Respondent then proceeds to argue that in any event petitioner would not be entitled to the claimed deduction since in respondent's view the phrase "compensated for by insurance" means "covered by insurance," and the facts show that petitioner's loss was covered by insurance.

Both parties refer in their argument to paragraph 7 of the stipulation of facts, petitioner apparently considering that this paragraph limited the issue in this case, and respondent that it left the complete burden of showing all elements of casualty loss on petitioner. Paragraph 7 of the stipulation is as follows:

7. For the year 1965, petitioner claimed a $500.00 casualty loss for storm damage to his sailboat on August 27, 1965. Any such loss was covered by insurance policy #YL–23–76–36, dated August 13, 1965, with the Reliance Insurance Company. However, petitioner did not file any claim with Reliance for the loss. The operation of the sailboat by the petitioner constituted a hobby rather than a business, and petitioner did not deduct the cost of the premium for 1965 as a business expense.

Respondent in his reply brief questioned petitioner's statement of the issue which we have quoted above and pointed out that his basis for disallowing petitioner's claimed deduction of $500 as a casualty was set out in his statutory notice and that as there set out the basis was that it had not been established that any deductible loss was sustained. Respondent in his reply brief opened his argument as to the casualty loss issue with the following paragraph:

Petitioner contends that his sailboat was damaged in a storm. This is quite possible. Petitioner further contends that the amount of the damage was in excess of the $600.00 noted on his return (net $500.00 claimed as casualty loss). Petitioner, however, has characteristically failed to point out what part of the record would sustain his allegation as to the *amount* of the damage. Thus, a review of the record should prove helpful.

In objecting to certain statements made in petitioner's brief, respondent objected to petitioner's statement that his failure to "file a claim for his storm loss is understandable," with the following statement:

Objected to as misleading in that the implication is that it was fear of cancellation that caused petitioner to refrain from making a claim rather than his inability to prove a loss occurred and, if so, that the amount involved was worth making a claim for.

Several pages of respondent's reply brief are devoted to petitioner's failure to prove that he sustained a casualty loss in 1965, and the remainder of that brief is devoted to answering petitioner's argument with respect to the meaning of the words in section 165(a) "not compensated for by insurance or otherwise."

Petitioner did not file a reply to respondent's original brief and made no request that he be permitted to file any reply to any new matter which might be considered to be raised in respondent's reply brief.

In his petition, petitioner's assignments of errors and allegations of facts in support thereof are, insofar as here pertinent, as follows:

4. The Commissioner made the following errors in asserting these tax deficiencies:

\* \* \* \* \* \* \*

f. Casualty loss in 1965.

\* \* \* \* \* \* \*

5. Petitioner asserts the following facts to support the assignments of errors set out in paragraph 4:

\* \* \* \* \* \* \*

f. Casualty loss can be supported.[3]

Although the opening statement of petitioner's counsel at the trial and the statement of issue in his brief appear to consider the issue with respect to the deductibility of the casualty loss to be the proper interpretation of the phrase "not compensated for by insurance or otherwise" contained in section 165(a), a review of the entire record indicates that petitioner must have understood that the issue as raised by the pleadings with respect to the casualty loss placed upon him the burden of showing every necessary element to sustain his claimed deduction for a casualty loss. At the trial petitioner testified, in reply to questions by his own counsel, that in 1965 he was the owner of a boat which he had acquired in 1955 and still had, that it was an old wooden boat, and that the boat was damaged on August 27, 1965. Petitioner also in response to questions from his own counsel, identified the document which he had obtained sometime in 1966 from "Tom" who was manager of the "River's End Marina," purporting to be an estimate of costs of certain repairs. When his counsel asked him to explain the difference in the estimated price and the work done on the boat, he replied that the work covered by the estimated price was not done. Petitioner's counsel offered in evidence the "estimate," and without objection by respondent's counsel it was received. The statement of George Quandee, which petitioner had obtained in 1966, was identified by petitioner on direct examination and was offered in evidence by petitioner's counsel and without objection by respondent's counsel was received. This procedure at the trial would indicate that petitioner was aware that it was incumbent upon him to prove every element necessary to show that he was entitled to a deduction in 1965 of $500 as a casualty loss.

Based on the entire record in this case, we consider the issue before

---

[3] Subpars. a through e and g of par. 4 and the same subpars. of par. 5 deal in the same summary fashion with other adjustments made by respondent in the notice of deficiency. Some of these issues were settled by the parties before the trial of this case, and the remaining, except the casualty loss issue, were settled after the conclusion of the trial. Petitioner assigned no error in his petition with respect to the addition to tax under sec. 6653(a), but at the trial and in his brief he stated that this item was in issue and respondent made no objection on the basis that the addition to tax under sec. 6653(a) was not properly placed in issue by the pleadings.

us to be whether on the basis of the evidence produced at this trial petitioner has established that he is entitled to a deduction for a casualty loss for the year 1965 for damage to his sailboat. Even if petitioner was unaware of the proof necessary to sustain the allegations in his petition, he would not for that reason be relieved of his burden of proof. There has been no pleading of any estoppel of respondent with respect to any facet of the case or any contention by petitioner that any form of estoppel is present. Since for the reasons hereinafter set forth we conclude that petitioner has not established that he had a casualty loss to his boat in 1965, we do not reach the issue primarily argued by the parties in their briefs of the proper meaning of the words in section 165(a) "not compensated for by insurance or otherwise." [4]

It has long been settled that a taxpayer, in order to prove that he is entitled to a deduction for a casualty loss, must show that his property was damaged by or as a proximate result of a fire, storm, shipwreck, or other casualty, and the amount of the loss resulting from the casualty as distinguished from other causes. *Matheson* v. *Commissioner*, 54 F. 2d 537 (C.A. 2, 1931), affirming 18 B.T.A. 674 (1930); *Ray Durden*, 3 T.C. 1 (1944); and *Harry Heyn*, 46 T.C. 302 (1966). In our view petitioner's proof in this case fails to establish the requisite elements to entitle him to a deduction for a casualty loss. The only evidence offered as to the existence of a storm on the course of the August 27, 1965, race was that there was "heavy weather" and weather which was "very foul with heavy seas and high winds." There is no showing that the "heavy" and "foul" weather was not commonplace and to be expected on the course of this race or even what course the race followed. See *Matheson* v. *Commissioner, supra*. However, we need not dwell on this aspect of petitioner's failure of proof since he has totally failed to establish that any damage which might have occurred to his boat during the race in this "foul weather" was as a result of the weather conditions as distinguished from the ordinary wear and tear on a wooden boat which is sailed hard during a long race.[5] Apparently one of the major uses made by petitioner of his boat was racing. At one juncture in the record petitioner stated that whereas he could himself sail his boat, that he in fact was the skipper and that normally sailing the boat was a "seven man job."

In speaking of his insurance policy he referred to it covering racing and the fact that he felt that he could not be without "liability insur-

---

[4] Apparently this issue has never been considered by this Court in factual circumstances comparable to those here present.

[5] The record does not show the number of miles the race covered. However, the inference from the entire record is that the course was long and difficult to navigate. The statement of George Quande referred to 30 miles of the racing being on a "beat to the windward."

ance at least." The reasonable conclusion from this record is that racing was a normal usage of petitioner's boat and that normally, after racing, the boat would need repair. Petitioner described the boat as an "old wooden boat" which required constant repairs. Irrespective of the inferences as to the normal use of the boat, there is no evidence in the record that a normal usage of the boat was not racing or that the yearly necessary repairs were not occasioned because of this normal usage of the boat. Some of petitioner's references in the record with respect to "deterioration" and "depreciation" of the boat indicate that he was thinking in terms of the repairs necessary to keep the boat in shape for racing.

This record is also devoid of reliable evidence as to the value of the boat before and after the race of August 27, 1965. The amount of a casualty loss is generally based on the fair market value of the property before and after the damage resulting from the casualty. *Helvering* v. *Owens*, 305 U.S. 468 (1939). When both parties had concluded examination of the petitioner, who was the only witness for petitioner, with no reference having been made to the fair market value of the boat before and after the race, the Court attempted to obtain at least petitioner's own opinion in this respect. The Court questioned petitioner with respect to how the valuation of $12,500 in the insurance policy was arrived at and whether that was his opinion of the value of the boat at the time the policy was taken out. Petitioner stated that the $12,500 value was put in the policy to determine the amount of premium and followed this with the statement: "At the time I think it was worth more. Today I probably couldn't sell it. It's a wooden boat, and everybody has Fiberglas or aluminum." This statement was not amplified nor was it explained why there was such a tremendous difference in the desirability of wooden boats in 1965 and at the time of the trial of this case in 1970. The Court then inquired as to the value of the boat after the race of August 27. Petitioner's answer to that question was: "I think I would have had trouble giving it away at that time. Well, I estimated a loss of six hundred dollars, which I think was a very nominal figure." When this statement is compared with the evidence which shows that in 1965 when petitioner spent only $150 in repairs on the boat to put in into reasonably safe condition for the balance of the season, as compared to much larger amounts which he testified he had expended in prior and subsequent years, it is readily apparent that there is no reliable evidence in the record as to the value of petitioner's boat before and after the race.

There is likewise no evidence of what portion if any of the cost of repairs after the August 27 race was necessitated by the "foul" weather during the race as distinguished from being normally re-

quired repairs after any long race. A fair inference from the record as a whole is that petitioner was continuously required to do caulking to his wooden boat to keep it in sailing condition. How much more caulking, if any, was required after the August 27, 1965, race because of the "foul" weather has not been shown. There has been no showing of how the "foul weather" could result in the requirement for use of "bottom paint."

If any damage above that normally sustained by a wooden sailboat in any lengthy race happened to petitioner's boat on August 27, 1965, there is nothing in this record to show that petitioner did not "knowingly or willfully sit back and allow" his property to be damaged or through his persistent hard sailing and not turning in as did 38 other boats in fact "willfully damage the property himself." In *John P. White*, 48 T.C. 430 (1967), we set forth as a truism introduced by the words, "needless to say," that any such knowing or willful damage to property would not be viewed as a casualty loss. We pointed out that it had long been recognized that mere negligence on the part of the property owner did not cause the occurrence to fall outside of the ambit of a casualty, citing among other cases *Harry Heyn, supra*. In that case we referred to an incident that might happen to an automobile taken out by the owner knowing that it had faulty brakes or slick tires possibly giving rise to a casualty loss. If an accident had occurred to petitioner's boat, it might be concluded that a casualty loss resulted. However, petitioner's boat was not in an accident insofar as this record shows. Any repairs needed to be made to petitioner's boat might be compared to the repairs needed on the brakes or the engine of an old car when no accident occurred but the brakes or engine became so worn as to require repairs as a result of the owner's driving it a long distance during heavy rain over rough roads in some form of distance driving competition.

We conclude that petitioner has failed to establish that he is entitled to a deduction in any amount in 1965 as a casualty loss to his boat.

Petitioner's only argument with respect to the addition to tax for negligence is that respondent has not proved that he was negligent and that he kept the same type of records most doctors keep. The burden of showing that part of the underpayment of his tax for the years here in issue was not due to negligence or intentional disregard of rules and regulations is on petitioner, not respondent. *Joseph Marcello, Jr.*, 43 T.C. 168, 182 (1964), affirmed on this issue 380 F. 2d 499 (C.A. 5, 1967). The evidence shows that petitioner kept no records with respect to a number of items he claimed as deductions on his Federal income tax return. The parties have disposed of the issues raised in this

case as to the deductibility of those items by agreement. However, this does not discharge petitioner's burden of showing that his failure to keep proper records of many of the items for which he claimed business expense deductions on his return was not due to negligence. On the basis of this record, we sustain respondent's determination of additions to tax for negligence for the years 1964 and 1965.

Since a number of issues were disposed of by agreement of the parties,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

———

FAY, *J.*, concurring: Since the issue raised in Judge Quealy's concurring opinion has not been placed before the Court by the majority, I consider a full discussion of this issue premature at the present time, the matter in controversy having been properly disposed of by the majority upon the valid grounds cited. However, in view of the extended treatment of the issue by Judge Quealy, I do not consider it inappropriate to briefly note my own views on this subject.

In concluding that the availability of insurance coverage must in all circumstances defeat any claimed deduction for casualty losses, heavy reliance has been placed upon the case of *Kentucky Utilities Co.* v. *Glenn*, 394 F. 2d 631 (C.A. 6, 1968). In my view that case is distinguishable from the instant one and, in any event, in light of the very brief treatment of the issue therein should not preclude a fresh consideration of this issue. Focusing then upon the statutory provision underlying the present dispute, I find it difficult to read into such provision an unqualified disallowance of a casualty loss deduction. The purpose of limiting the deduction in question to uncompensated losses is to deny an unwarranted tax benefit to taxpayers who sustain essentially ephemeral losses, the effects of which will be neutralized by the receipt of compensation. The allowance of a loss under such circumstances would clearly provide a windfall to taxpayers who have not sustained an economic loss in any realistic sense. In contrast, the insured taxpayer who is forced to forego the benfits of such insurance does sustain a loss. Such a loss is no less real or permanent than that suffered by an uninsured individual and accordingly should equally give rise to a mitigating tax deduction. The effect of a contrary view is to discriminate against persons carrying insurance, a result which I do not think was intended.

Nor do I think there exists any validity to the assertion that the voluntary surrender of rights under an insurance contract justifies the disallowance of a deduction for the sustained loss. Such a view is, in my opinion, highly artificial and divorced from reality. Practical considerations which often influence the decision of a taxpayer to refrain

from pursuing his legal rights under an insurance contract render the assumed freedom of choice so heavily relied upon largely illusory. The insured individual is frequently compelled to forego the desirable benefits of his insurance coverage in order to avert the otherwise inevitable cancellation of his policy or prohibitive increase of his insurance rates. Under these circumstances, such an individual is for all practical purposes without insurance, having been forced to assume the risk of loss in order to assure his continued coverage, and should be so treated. Nor do I consider the application of constructive-receipt principles apposite to the issue under consideration since the realization of any existing legal rights by the taxpayer is effectively barred by the resulting detrimental consequences indicated above.

While a taxpayer's failure to collect payment under an insurance policy may sometimes justify disallowance of a loss deduction, I would readily conclude, given the realities of the insurance field, that the statute does provide a deduction for insured but unrecovered losses where the taxpayer has, for valid practical reasons, relinquished his rights to claim compensation from the insurance company.

DRENNEN and HOYT, JJ., agree with this concurring opinion.

------

SIMPSON, J., concurring: I agree with the result reached by the Court, but I would have faced the question of whether the loss was compensated for by insurance. I agree with Judge Quealy that the loss was compensated for by insurance for the reasons given by him.

ATKINS and SCOTT, JJ., agree with this concurring opinion.

------

QUEALY, J., concurring: While I concur in the result, I am unable to join with the majority for two reasons. First, the parties limited the issue presented for our determination to whether the petitioner's claimed casualty loss was compensated for by insurance. By not limiting their decision to the issue as framed by the respondent and contested by the petitioner, the majority imposed on the petitioner a greater burden than to disprove the respondent's deficiency determination. See *Baird* v. *Commissioner*, 438 F. 2d 490 (C.A. 3, 1970); *William B. Turner*, 56 T.C. 27, 33 (1971) (dissenting opinion).

Second, even if the issue was not so limited, as the petitioner's theory of recovery could not under any circumstances result in a decision in his favor, it is my opinion that the case should have been decided on that ground rather than on his failure of proof. In other words, before attempting to decide whether the petitioner sustained his burden of proof with respect to the facts, we should determine whether the alleged facts were sufficient to establish a casualty loss. See Rule 21, Tax Court Rules of Practice.

Construing the facts alleged by the petitioner in a way most favorable to him, they are as follows: The petitioner claimed a $500 casualty loss for storm damage to his sailboat on August 27, 1965. That loss was covered by insurance. However, the petitioner did not file a claim for the loss.

Section 165(a) allows as a deduction any loss sustained during the taxable year and "not compensated for by insurance." [1] Section 1.165–1(a), Income Tax Regs., refers to any loss "not made good by insurance * * *." These two statements are of the same import and both refer to the loss being "made good" or "compensated" by insurance. Both these statements refer to the loss, i.e., insofar as a claimed casualty loss is concerned the casualty loss being "made good" or "compensated" by insurance.

Although the loss was insured, the petitioner elected not to file a claim, not on the belief that the claim would be contested or disallowed,[2] but on the belief that the filing of the claim would result in his inability to renew his policy. It is clear that under these circumstances the petitioner had no casualty loss in 1965 which was "not compensated" or "made good" by insurance within the meaning of the statute and respondent's regulations. Any economic disadvantage which petitioner may have sustained was not as a result of any casualty loss not being compensated for by insurance but rather was as a result of his choosing not to accept the funds available in compensation for any casualty loss.

Under such circumstances any economic disadvantage resulting to petitioner from injury to his boat could not be a casualty loss "not compensated for by insurance" but was a disadvantage resulting from petitioner's choice not to pursue the right which he had for strictly personal reasons. Just as an insurance payment with respect to personal property results in a nondeductible expense, so the choice not to take the compensation available under an insurance policy results in a nondeductible personal loss.

Sections 1.165–1(d)(2)(i) and (d)(2)(ii), Income Tax Regs., do not deal with circumstances where a taxpayer deliberately chooses not to receive a collectible insurance payment. Section 1.165–1(d)(2)(i), Income Tax Regs., is concerned only with the proper year of the loss when a claim has been made for reimbursement. Section 1.165–1(d)(2)(ii), Income Tax Regs., refers to the portion of the loss "not covered by

---

[1] Prior to the Revenue Act of 1894, 28 Stat. 509, a deduction was available for losses that were not "covered" by insurance. Seidman, Legislative History of Federal Income Tax Laws, 1938–1861, p. 1018.

[2] It is clear that if the event was a loss within the meaning of sec. 165, it would give rise to a claim under the petitioner's insurance policy which insured the boat against any damages resulting from perils of the sea.

a claim for reimbursement with respect to which there is a reasonable prospect of recovery." It is clear that this provision of the regulations refers to losses in excess of insurance coverage.

Regardless of whether or not a loss was incurred, that loss was compensated for by insurance and thus no casualty loss could exist under section 165(a). See *Kentucky Utilities Co.* v. *Glenn*, 394 F. 2d 631 (C.A. 6, 1968).

The taxpayer in *Kentucky Utilities Co.* v. *Glenn, supra,* claimed a right to deduct the sum of $44,486.67 on its 1953 tax return as an uninsured loss. This was the sum which the taxpayer did not recover out of approximately $150,000 damage to a turbo generator which was insured with Lloyds of London for $200,000 subject to a $10,000 deductible provision.

Lloyds never disputed its coverage of the loss, but did insist on its right of subrogation to the taxpayer's rights against Westinghouse, the supplier of the turbo generator. Westinghouse disputed any liability under its warranty of the generator.

Ultimately, as between the three disputing parties, Westinghouse paid $65,550.93 of the total cost of repairs; Lloyds paid $37,500, relinquishing any right of subrogation against Westinghouse, and the taxpayer assumed responsibility for the remaining $44,486.67 worth of damage.

The District Court held that the taxpayer had sustained an uninsured loss of $10,000 because of the deductible feature of the policy. The court found as a fact:

6. For business reasons, * * * [the taxpayer] did not want any litigation brought against Westinghouse. Moreover, because of possible difficulty in retaining insurance of this character on its equipment, * * * [the taxpayer] did not want Lloyds to pay all of the loss except the $10,000.00 deductible under the policy.

 * * * * * * *

8. * * * [the taxpayer] voluntarily assumed $34,486.67 of the cost of repairs to the generator to protect Westinghouse from suit by Lloyds and to avoid difficulty in obtaining insurance with Lloyds. The expenditure of $34,486.67 in this manner does not constitute a loss * * *

In upholding the findings of the trial court that the voluntary assumption of part of the cost of repairs to the generator did not constitute a loss, the Court of Appeals held that the trial court's findings of fact were not clearly erroneous, and that the loss was not an "uninsured loss."

In my view, the *Kentucky Utilities Co.* case should control. It is true that the loss was incurred prior to 1960, the year in which the regulations applicable to the instant case were issued. However, those regulations were applicable at the option of the taxpayer in the

*Kentucky Utilities Co.* case (see sec. 1.165–1(d)(4), Income Tax Regs.), and in any event the regulations merely amplified the prior regulations as interpreted by the courts. *Louis Gale*, 41 T.C. 269 (1963).

The instant case is to be distinguished from *Broderick* v. *Anderson*, 23 F. Supp. 488 (S.D.N.Y. 1938). In the *Broderick* case, the taxpayer discovered an embezzlement loss in 1929. A claim was presented to the taxpayer's insurance company in 1930. The insurance company rejected that claim in 1930. The *Broderick* case involved the proper year for the deduction of the loss rather than the question presented by the instant case of whether a taxpayer can deliberately choose not to receive a collectible insurance payment.

Any loss sustained by the petitioner resulted from his election not to claim compensation rather than from the casualty loss not being compensated for by insurance. We would certainly not allow a taxpayer to have a deduction for a bad debt loss when the facts showed that he could have collected the debt but chose not to do so for some personal reason. There is no substantive difference in the two situations.

There have been times when the surtax rate applied to individuals was as high as 91 percent. See 1 C.C.H. 1945 Fed. Tax. Rep. p. 106. It would be unreasonable to assume without specific direction by Congress that the tax law was designed to put a taxpayer in the position to choose between the recovery of a loss from the Government through a deduction or the recovery from his insurer.

SCOTT, *J.*, agrees that the second ground of this concurring opinion properly interprets section 165(a) and sets forth an additional basis upon which this case could have been decided.

STERRETT, *J.*, agrees with this concurring opinion.