T.C. Memo. 1997-142


UNITED STATES TAX COURT


WILLIAM WHELPLEY, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

WILLIAM AND SARA WHELPLEY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 21644-93, 21690-93.   Filed March 18, 1997.


Alan L. Frank and David Kessler, for petitioners.

David Breen and Kenneth J. Rubin, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, Judge:  Respondent determined the follow-
ing deficiencies in, additions to, and penalties on
petitioners' Federal income tax for the years in issue:

William Whelpley, Jr., docket No. 21644-93:

|  |  | Addition to Tax | Penalty |
| Year | Deficiency | Sec. 6653 | Sec. 6662 |
| 1987 | $3,612 | $181 | -- |
| 1989 | 1,148 | -- | $230 |

William and Sara Whelpley, docket No. 21690-93:

|  |  | Additions to Tax | | Penalty |
| Year | Deficiency | Sec. 6653 | Sec. 6661 | Sec. 6662 |
| 1987 | $26,076.87 | $1,304 | $6,519 | -- |
| 1989 | 22,047.87 | -- | -- | $4,410 |

Unless stated otherwise, all section references are to the Internal Revenue Code as in effect during the years in issue. The above-captioned cases were consolidated for trial and briefing.

After concessions by the parties, the issues remaining for decision are: (1) Whether certain payments made to petitioners' wholly owned S corporation are includable in petitioners' income and, if so, when the payments must be reported; (2) whether the notices of deficiency for petitioners' 1989 taxable year are valid; and, (3) whether petitioners are liable for the additions to tax and penalties determined by respondent under sections 6653(a)(1)(A), 6661, and 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts filed by the parties and

the attached exhibits are incorporated herein by this reference. Petitioner William Whelpley, Jr., resided in Morris Plains, New Jersey, at the time he filed his petition in the case at docket No. 21644-93. Petitioners William Whelpley, Sr., and Sara Whelpley resided in Randolph, New Jersey, at the time they filed their joint petition in the case at docket No. 21690-93. Petitioner William Whelpley, Jr., is the son of petitioners William and Sara Whelpley. References to Mr. Whelpley are to Mr. William Whelpley, Sr.

Mr. Whelpley is a physicist who specializes in computers and telecommunications. He studied physics at the University of Iowa from 1957 to 1962. After 1962, he worked as a research physicist for the University of Iowa and as a manager for Sperry Corp. He was also employed by American Telephone and Telegraph and Automatic Data Processing. In 1981, Mr. Whelpley and several other persons founded DAMA Telecommunications Corp. Mr. Whelpley served on the board of directors of that company from its inception until 1986.

After Mr. Whelpley resigned from the board of directors of DAMA Telecommunications Corp., he began to provide consulting services to Weeden Capital Management, Inc. (Weeden). Weeden is wholly owned by Weeden & Co., and is unrelated to petitioners. Weeden acts as the management

company for Weeden Capital Partners, a venture investment partnership.  Initially, Mr. Whelpley was retained to advise Weeden about product development by Avant-Garde Computing, Inc. (Avant-Garde), a publicly traded computer company in which Weeden owned a 15-percent capital stock interest.

On January 2, 1987, Mr. Whelpley founded Whelpley Associates, Inc. (WAI) as a vehicle for providing his consulting services.  During each of the years in issue, Mrs. Whelpley and Mr. Whelpley, Jr., owned 87.5 and 12.5 percent of the outstanding stock of WAI, respectively. Mr. Whelpley served as an officer and employee of WAI but did not own any WAI stock during any of the years in issue. WAI elected to be an S corporation, pursuant to section 1362(a), and it filed a Form 1120S, U.S. Income Tax Return for an S corporation, for each year of its existence.  WAI used the accrual method of accounting in 1987 and 1988, and a hybrid method in 1989.

At the time Mr. Whelpley began consulting for Weeden, both he and Weeden believed that Avant-Garde needed a new generation of computer processor to support its products. Mr. Whelpley and Weeden agreed to form Communications Processors, Inc. (CPI), for the purpose of developing the processor with capital supplied by Weeden and expertise supplied by Mr. Whelpley.  This processor was to be

sold to Avant-Garde for use with the latest version of its "Net/Alert" product, but Mr. Whelpley and Weeden anticipated that it could also be sold to other purchasers. In this opinion, we refer to the development of the computer processor as the CPI project.

CPI was incorporated in Delaware on January 28, 1987. The initial directors were Mr. Whelpley and two employees of Weeden, including Mr. Thomas L. Flaherty. Although Mr. Whelpley was the key employee of both WAI and CPI, and although the companies shared office space, CPI was at all times separate from and independent of WAI.

Generally, Weeden's business objective was to invest in product and service companies, and in accordance with that investment objective, it was interested in obtaining an equity interest in CPI. Weeden's management was not interested in investing in consulting businesses such as WAI, and Weeden never considered the possibility of becoming a shareholder of WAI.

CPI and Avant-Garde memorialized their oral agreement regarding the CPI project in a letter dated April 29, 1987. As set forth therein, CPI agreed to develop "an industrial grade, 80386-based communications processor" suitable for Avant-Garde's Net/Alert application and to cooperate with Avant-Garde in developing a "statement of requirements" for the computer equipment. In return, Avant-Garde agreed to

purchase a "perpetual license" to use the product.  The
terms of Avant-Garde's payments were set forth in the
letter as follows:

> Cash
>
> a)  $280,000 ($100,000 payable at commencement) in payment
> with respect to * * * [phase one of the project], payable
> at $40,000 per month commencing at the date thereof.
>
> b)  $100,000 in payment with respect to * * * [phase two
> of the project], payable at $25,000 per month at the
> commencement of this item of work.
>
> AVGA Stock
>
> 190,000 shares payable as follows:
>
> a)  140,000 upon performance of * * * [phase one].
>
> b)  50,000 upon performance of * * * [phase two].

On May 1, 1987, Weeden orally agreed to assist CPI
in completing the CPI project by advancing to CPI any
funds required in excess of the advance license payments
it was to receive from Avant-Garde.  This agreement was
memorialized in a letter dated May 12, 1987, from
Mr. Thomas Flaherty, vice president of Weeden and a member
of its board of directors, to Mr. Whelpley in his capacity
as president of CPI.  This letter states as follows:

> This letter will confirm our oral agreement of May 1st.,
> concerning commitments made by Weeden Capital Management,
> Inc. (WCMI) to Communications Processors, Inc. (CPI).
>
> CPI has reached an agreement with Avant-Garde Computing,
> Inc. (AVGA) for the development of certain "386" based
> hardware and software to be used in the next generation
> of AVGA's Net/Alert product.  Under this agreement:

> CPI and AVGA will jointly develop a statement of
> requirements (SOR I) under which CPI will deliver
> to AVGA hardware and software that meet the
> specifications of this SOR.  AVGA will advance to
> CPI the sum of $280,000 as partial payment for a
> license to those products delivered to AVGA under
> SOR I; as agreed in CPI's letter of April 29, 1987.
>
> CPI and AVGA have further agreed to jointly develop
> a second statement of requirements (SOR II) under
> which CPI will deliver to AVGA hardware and software
> that meet the specifications of SOR II.  AVGA will
> advance to CPI the sum of $100,000 as partial
> payment for a license to those products delivered
> to AVGA under SOR II; as agreed in CPI's letter
> of April 29, 1987.

In an effort to assure the timely delivery of those
products to be licensed to AVGA by CPI; (sic) Weeden
Capital Management, Inc. agrees to advance to CPI any
funds, in excess of those committed by AVGA as advance
license payments, reasonably required to complete CPI's
commitments to AVGA under SOR I and SOR II.

                    Sincerely,


                    /s/ Thomas L. Flaherty
                      Thomas L. Flaherty
                       Vice President


After CPI's incorporation, its activities consisted of
entering into the production agreement with Avant-Garde as
set forth in the letter dated April 29, 1987, entering into
the agreement with Weeden as set forth in the letter dated
May 12, 1987, quoted above, opening a bank account, and
receiving one check from Avant-Garde.  Various documents
were drafted on CPI's behalf, including bylaws, an
indemnity agreement for directors and officers of the
corporation, a common stock purchase agreement, and a
preferred stock purchase agreement, but none of these
documents were ever executed.  CPI paid the funds received

from Avant-Garde to WAI. CPI never issued any stock, and it never filed a Federal income tax return.

Mr. Whelpley undertook the work relating to the CPI project through WAI rather than CPI. WAI received the funds advanced by Weeden for the project, and WAI deducted expenses relating to the project on its income tax return. Weeden advanced a total of $103,093 to WAI for the CPI project in 1987. A memorandum written by Mr. Whelpley states that "bills [were] written to CPI by WAI" for this work. WAI included the funds advanced by Weeden in the gross income reported on its 1987 income tax return.

In addition to the advances for the CPI project, Weeden transferred funds to WAI as compensation for Mr. Whelpley's consulting services in connection with unrelated matters. WAI included these other funds in gross income, and they are not at issue.

At the end of 1987, Weeden's general ledger trial balance included an account labeled "RECEIVABLE FROM CPI" which had a debit balance of $103,092.89. The trial balance also included an account labeled "PROFESSIONAL FEES - CONSULTANTS." Based upon the entries in these two accounts, it appears that during 1987, payments to "Whelpley Associates" were initially booked to PROFESSIONAL FEES-CONSULTANTS and were reclassified at the end of the year to RECEIVABLES FROM CPI.

Mr. Flaherty sent a letter dated December 31, 1987, to Mr. Whelpley's attention at CPI regarding the advances Weeden had made in connection with the CPI project.  This letter states as follows:

> Our auditors Spicer & Oppenheim, Certified Public Accountants, * * * are now engaged in an examination of our financial statements as of December 31, 1987.
>
> In connection therewith, they wish to confirm the following details of your note(s) and the collateral held by us.
>
> | Date of Note | Due Date | Unpaid Principal | Interest Rate | Interest Paid to |
> |---|---|---|---|---|
> | 12/28/87 | On demand | $103,093 | None | None |
>
> Please confirm the correctness or report any differences by completing this form and returning it directly to our auditors in the enclosed reply envelope.
>
> We would appreciate your cooperation in this matter.
>
> Very truly yours,
>
> Weeden Capital Management, Inc.
>
>
> /s/ Thomas L. Flaherty
> Thomas Flaherty
> Vice President
>
> The above information regarding our notes payable to you is correct except as stated below:
>
> Date_____          Signed_____

After a discussion with Mr. Flaherty, Mr. Whelpley signed the letter and returned it to Spicer & Oppenheim.  Based upon his discussion with Mr. Flaherty, Mr. Whelpley believed that Weeden would require repayment of the

advances only with CPI stock, and that Weeden would not require repayment in cash.

Sometime between April 29 and September 10, 1987, Avant-Garde withdrew its commitment to purchase a license to use the CPI product. Facing a shortage of capital, Mr. Whelpley sought an outside investor to fund the project. WAI prepared a draft business plan for CPI, dated September 10, 1987, to assist in this process. However, Mr. Whelpley was unable to secure either a new source of financing or any new customers for the product. In 1988, Weeden lost interest and stopped investing in the project. The project was then abandoned. Mr. Whelpley resigned from CPI's board of directors in 1988.

Weeden neither collected nor attempted to collect the funds it had advanced to WAI on behalf of CPI for the CPI project. Weeden's general ledger trial balance for 1988, dated February 3, 1989, shows that the account RECEIVABLE FROM CPI had a debit balance of $103,092.89 at the beginning of 1988, and that offsetting credits were made to the account during the year. The trial balance also shows the following entries in an account entitled "Loss from CPI" which had a debit balance of $103,092.89 at the end of 1988:

| Transaction Date[1] | Amount | Reference |
|---|---|---|
| May 5, 1988 | $43,092.89 | Write off Loss in CPI |
| July 31, 1988 | 10,000.00 | Loss in CPI/Re: Mgt. Fee |
| Aug. 31, 1988 | 10,000.00 | Loss in CPI/Re: Mgt. Fee |
| Sept. 30, 1988 | 10,000.00 | Loss in CPI/Re: Mgt. Fee |
| Oct. 31, 1988 | 10,000.00 | Record loss from CPI Rec |
| Nov. 30, 1988 | 10,000.00 | Loss from Uncollect Rec |
| Dec. 31, 1988 | 10,000.00 | Loss Uncollect Rec-CPI |

[1]The "transaction date" indicates the dates on which these items were written off in Weeden's books rather than the dates on which the cash was transferred.

In this manner, Weeden wrote off the balance in the account labeled RECEIVABLE FROM CPI. On its Form 1120, U.S. Corporation Income Tax Return for 1988, Weeden claimed a bad debt deduction in the amount of $103,093, the amount it had advanced for the CPI project.

Beginning in September 1989, respondent examined WAI's returns for 1987, 1988, and 1989. During the examination, WAI's representatives raised the issue whether WAI had erred by including in WAI's gross income for 1987 the advances that had been made by Weeden during the year. WAI's representatives took the position that the advances constituted either equity investments in WAI or loans to WAI which, in either event, should not have been included in petitioners' gross income in 1987.

A letter dated September 18, 1991, from Mr. Flaherty and addressed to Mr. Whelpley at WAI, states that Weeden considered the subject advances as loans to WAI, and

expected to be repaid either in cash or with an equity interest in CPI. Mr. Flaherty's letter states as follows:

Dear Mr. Whelpley:

This letter is to confirm our conversation as you requested regarding the accounting treatment of the investment made by Weeden in Whelpley related projects in 1987. According to our records, Weeden funded the development of the business plan and prototype device with approximately $103,000.00 as confirmed by my 1987 letter.

Whelpley Associates, Inc. and Communications Processors, Inc. are thought to be essentially the same by Weeden Capital Management, Inc. They were considered to be a joint vehicle for developing the ideas that surrounded a certain business concept which you and we originated. Communications Processors, Inc. was intended to be separated from Whelpley Associates, Inc. when other outside funding was secured.

Weeden was interested in accelerating the availability of a particular product design to accommodate an initial customer. To that end and pursuant to an agreement, Weeden advanced funds in the amount indicated above to cover operating expenses associated with that development. The Amounts that were advanced, as loans, to Whelpley Associates, Inc. and yourself were to be recovered either; (1) in the form of loan repayments, or (2) convertible into equity in the projects that CPI and WAI were pursuing. Weeden considers amounts advanced to be returnable as equity in any business entity that results from the activity funded in 1987.

Sincerely,

Thomas L. Flaherty

In due course, respondent determined the following adjustments to WAI's taxable income:

| Adjustments | 1987 | 1988 | 1989 |
|---|---|---|---|
| Fee participation | $142,607 | $51,343 | -- |
| Commissions | -- | 10,515 | -- |
| Employee benefits | 6,472 | 5,710 | $5,505 |
| Interest income | (3,230) | (6,700) | -- |
| Informal claim | -- | -- | -- |
| Total adjustments | 148,756 | 60,328 | 5,505 |
| Taxable income reported | (52,045) | (111,556) | 79,930 |
| Corrected | 96,711 | (51,228) | 85,435 |

In computing the above adjustments, respondent rejected the position of WAI's representatives that WAI's income for 1987 should be reduced by the amount of the advances received from Weeden. That issue is referred to above as "Informal claim".

Based upon the above adjustments to WAI's taxable income, respondent determined increases in the younger Mr. Whelpley's distributable income from WAI of $17,289 in 1987 and $7,644 in 1989, computed as follows:

|  | 1987 | 1989 |
|---|---|---|
| WAI's corrected income | $96,711 | $85,435 |
| Distributive share, 12.5% | 12,089 | 10,679 |
| Section 179 deduction | (1,231) | (1,250) |
|  | 10,858 | 9,429 |
| Loss from WAI, per return | 6,431 | -- |
| Income from WAI, per return | -- | (1,785) |
| Adjustment | 17,289 | 7,644 |

Respondent determined the subject deficiencies in the younger Mr. Whelpley's 1987 and 1989 returns based solely on the above adjustments to his share of income from WAI.

Based upon the above adjustments to WAI's taxable income, respondent also determined increases in Mr. and Mrs. Whelpley's distributable income from WAI of $106,860 in 1987 and $70,813 in 1989, computed as follows:

|                              | 1987     | 1989     |
|------------------------------|----------|----------|
| WAI's corrected income       | $96,711  | $85,435  |
| Distributable share, 87.5%   | 84,622   | 74,756   |
| Section 179 deduction        | (8,620)  | (8,750)  |
|                              | 76,002   | 66,006   |
| Loss from WAI, per return    | 30,858   | 4,807    |
| Adjustment                   | 106,860  | 70,813   |

Respondent made the above adjustments to Mr. and Mrs. Whelpley's 1987 and 1989 returns in determining the subject deficiencies.

The only issue raised at trial involved petitioners' claim that the advances made by Weeden should not have been included in WAI's income. Petitioners argued at trial that Weeden's advances constituted either an equity investment in WAI by an ineligible shareholder, or a second class of stock in WAI, which in either event terminated WAI's S corporation election. Petitioners also argued that, if the advances constituted loans from Weeden that were

discharged, then WAI received cancellation of indebtedness income in some year other than 1987 or 1989.

Shortly after trial, respondent filed Motion for Leave to File Amendments to Answers and to Conform the Pleadings to the Proof. In her motion, respondent seeks to amend her answers to raise, as an affirmative defense in both cases, the allegation that petitioners are prohibited by the "duty of consistency" from asserting that WAI's S corporation election was terminated during any of the years in issue. Respondent further seeks to amend her answers to allege that, if the Court determines that Weeden's advances constitute loans, then those loans were discharged and gave rise to cancellation of indebtedness income in 1988. In an opposition filed in response to respondent's motion, petitioners argue that they are not prohibited from raising the validity of WAI's S corporation election, and that the Court does not have jurisdiction to determine a deficiency for 1988 because respondent had not issued a notice of deficiency for that year.

Subsequently, respondent issued a notice of deficiency to each petitioner with respect to the 1988 taxable year. In these notices, respondent determined that the advances from Weeden in the amount of $103,093 were loans to WAI which were discharged and gave rise to cancellation of

indebtedness income in 1988.  Each petitioner filed a petition in this Court contesting respondent's determination.  See <u>Whelpley v. Commissioner</u>, docket No. 5394-95 (William and Sara G. Whelpley); <u>Whelpley v. Commissioner</u>, docket No. 5463-95 (William Whelpley, Jr.). References to the related cases are to these cases.

Thereafter, the related cases were set for trial. Shortly before the trial of those cases, the parties filed a stipulation of settled issues which states in part as follows:

> the parties reached a basis of settlement with respect to the taxable year 1988 as follows:
>
> b.  If the Court determines the $103,693.00 was a loan to WAI in 1987, WAI received a discharge of indebtedness of $103,693.00 from Weeden during 1988.
>
>     *     *     *     *     *     *     *
>
> e.  The parties agree to be bound by the trial record established through oral testimony, stipulated facts with exhibits, and exhibits introduced by the parties at trial with respect to Docket Numbers 21644-93 and 21690-93.

- 17 -

OPINION

At the outset, we note that there is a discrepancy involving the amount of the adjustment at issue. The stipulation of facts filed by the parties states:

> 17. During the calendar year 1987, Whelpley Associates, Inc[.], received at least $103,693.00 from Weeden Capital Management, Inc., which Whelpley Associates, Inc., included in gross receipts.

The parties also base their arguments on the assumption that the adjustment at issue is $103,693, and the stipulation of settled issues filed by the parties in the related cases refers to $103,693. However, documents entered into evidence including Mr. Flaherty's letter of December 31, 1987, Weeden's general ledger trial balance for 1987 and 1988, and Weeden's 1988 income tax return, report the amount of the advances as $103,093. The parties have not explained the discrepancy between these figures, and we accept the stipulation of the parties on this point.

Character of Payments From Weeden to WAI

The principal issue in these cases involves the characterization of the cash advances made by Weeden. Respondent determined that the subject payments constitute gross income to WAI in 1987 as reported on WAI's 1987

return, and rejected the informal claim made by or on behalf of petitioners during the audit that the payments are not includable in WAI's income.  Petitioners bear the burden of proving that respondent's determination is in error.  Rule 142(a), Tax Court Rules of Practice and Procedure (hereinafter all Rule references are to the Tax Court Rules of Practice and Procedure).

Petitioners argue that respondent's determination is in error because the subject payments were "never intended to result in income" to WAI but, in fact, were made by Weeden "to receive an equity interest".  Petitioners' post-trial brief states as follows:

> Petitioner William Whelpley testified that it was his understanding that in exchange for these moneys, Weeden, a venture capital investor, was to receive an equity interest. This understanding was confirmed by the independent testimony of Thomas Flaherty, who, when responding to a question propounded by the * * * [Court] stated, under penalties of perjury that, in exchange for this investment, Weeden expected to receive an equity interest.

Petitioners do not explicitly argue that the subject payments constitute contributions to WAI's capital, and they do not cite section 118(a), which provides that "gross income does not include any contribution to the capital of

the taxpayer".  Nevertheless, that is the thrust of their argument.

The difficulty with petitioners' argument is that there is no evidence that Weeden sought to make an equity investment in WAI.  To the contrary, Mr. Flaherty testified, and we find, that Weeden did not have an

interest in becoming a stockholder of WAI and that Weeden's management never considered investing in WAI's stock.  He further testified, and we find, that Weeden intended to advance moneys to CPI, and if the CPI project was successful, to receive an equity interest in CPI. Mr. Flaherty testified as follows:

> Q        And what was your understanding, if you can recall, of Weeden's investment or involvement or what did it get as a result of transferring these monies, if anything. Did it have a right to be repaid, for example?
>
>         *   *   *   *   *   *   *
>
> The Witness:  Well, a right to be repaid?  I guess we had a right to. I mean, they were advances, I guess.  I -- the way -- I know what the intent was, if that's what you're asking.
>
> Q        What was the intent, sir?
>
> A        The intent was that we would advance monies to Cpi, Cpi would develop these products, we would have -- get an equity position eventually in Cpi and that's why we were doing it.

Similarly, Mr. Whelpley testified that "Weeden expected only to receive shares in CPI in return for its investment in CPI."

As we view the facts, CPI had entered into the agreement with Avant-Garde to develop a computer processor. Weeden agreed to advance moneys to CPI to assist CPI in performing its obligations under the agreement with Avant-Garde. Weeden expected to obtain stock in CPI if the venture was successful. Weeden made the subject payments pursuant to its agreement with CPI. Mr. Whelpley was the principal officer of both WAI and CPI, but the two were separate corporations, and WAI was not formally involved in the CPI project. Weeden issued the advances to WAI as a convenience to Mr. Whelpley, but it did not intend to obtain an equity investment in WAI or to lend money to WAI. From Weeden's point of view, the advances were made to CPI. This is made clear by the fact that at the end of 1987, the advances were reclassified on Weeden's books into an account entitled RECEIVABLE FROM CPI.

Petitioners attempt to blur the distinction between CPI and WAI by arguing that CPI was a "division" of WAI. However, we find that CPI was, at all relevant times, a separate and distinct corporation from WAI. Although

Mr. Whelpley was a director and key employee of both WAI and CPI, and although the two companies shared office space, CPI was separately incorporated, maintained a separate bank account, and established a distinct and independent board of directors. Moreover, Mr. Whelpley acknowledged during his testimony at trial that CPI was a "functioning entity". Thus, we find that CPI was not a "division" of WAI and we reject petitioners' argument that Weeden's intent to make an equity investment in CPI somehow how constituted an equity investment in WAI. In this connection, we note that in their post-trial briefs, petitioners abandoned the argument advanced at trial that CPI was "a wholly owned subsidiary of Wai."

We note that Mr. Flaherty's letter of September 18, 1991, states as follows:

> The amounts that were advanced, as loans, to Whelpley Associates, Inc. and yourself [Mr. Whelpley] were to be recovered either; (1) in the form of loan repayments, or (2) convertible into equity in the projects that CPI and WAI were pursuing. Weeden considers amounts advanced to be returnable as equity in any business entity that results from the activity funded in 1987.

During his testimony, Mr. Flaherty stated that he did not recall writing the letter of September 18, 1991, but he reiterated the fact that Weeden intended to advance money

to assist CPI to develop the computer component and eventually to obtain an equity interest in CPI. He testified as follows:

> Very simply, I think we were advancing monies for the use of CPI to develop its product and we would eventually own part of CPI. That was our goal, was to own part of Communication Processors, Inc. That would be a product, the company developed a product and that's what we're interested in.

Based upon Mr. Flaherty's testimony, we do not credit the statement contained in his letter of September 18, 1991, that Weeden made the subject advances "as loans, to Whelpley Associates, Inc. and yourself". We find that Weeden made the subject advances either as loans to CPI or contributions to CPI's capital. Weeden issued the checks to WAI, but it did so on behalf of CPI, and it did not intend the advances to be loans to WAI or contributions to WAI's capital.

For the above reasons, we reject petitioners' position that WAI's income for 1987 should be reduced in the amount of $103,693, and, thus, we accept respondent's determination that the aggregate amount of Weeden's advances is includable in WAI's income in 1987. In reaching this result, we note that the record suggests that CPI constructively received the subject moneys from

Weeden, either as a loan or as a contribution to capital, and paid the moneys to WAI in return for WAI's work on the CPI project.  In this regard, we note that Mr. Whelpley's memorandum dated September 9, 1991, suggests that "WAI applied these amounts to reduce bills written to CPI by WAI."  Mr. Whelpley also testified the he "conducted all of the business of CPI within Whelpley Associates."  Thus, the record suggests the possibility that CPI retained WAI to do the work required under CPI's contract with Avant-Garde and applied Weeden's advances to pay WAI for that work.  We also note that because WAI reported these funds as gross income on its 1987 return, petitioners must present cogent evidence to overcome this admission.  See e.g., Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989).  We find that petitioners have failed to meet this burden, and thus they have failed to prove that the amount of the advances is not includable in WAI's income in 1987, as determined by respondent.

Petitioners' principal position is that, upon receipt of the cash payments from Weeden, WAI ceased to be a "small business corporation", as defined by section 1361(b)(1)(D), with the result that WAI's S corporation election auto- matically terminated as provided by section 1362(d)(2). As a result of the termination of WAI's S corporation

election, petitioners argue that they are not subject to tax on WAI's income because WAI would be treated as a C corporation and "petitioners would only be taxed on distributions received [from WAI] in the form of dividends in 1987 of which there were none."

Section 1361 defines a small business corporation in relevant part as follows:

SEC. 1361(b). Small Business Corporation--

(1) In General.--For purposes of this subchapter, the term "small business corpora-tion" means a domestic corporation which is not an ineligible corporation and which does not--

\* \* \* \* \* \* \*

(B) have as a shareholder a person (other than an estate and other than a trust described in subsection (c)(2)) who is not an individual, [and]

\* \* \* \* \* \* \*

(D) have more than 1 class of stock.

Petitioners contend that WAI ceased to be a small business corporation for two reasons. First, they contend that Weeden obtained an equity interest in WAI and is not an eligible shareholder for purposes of the definition of small business corporation because it is not an individual, as required by section 1361(b)(1)(B). Alternatively, petitioners contend that the interest in WAI that Weeden

obtained in exchange for the subject cash advances constitutes a second class of stock in violation of section 1361(b)(1)(D). Petitioners argue that Weeden's interest in WAI constitutes a second class of stock because the "governing provisions" of CPI give WAI and Weeden different rights to distribution and liquidation proceeds, contrary to the requirements of section 1.1361-1(l)(1), Income Tax Regs. Specifically, petitioners point to the fact that under the stock purchase agreement prepared for CPI, Weeden was to receive both common and preferred stock in CPI while WAI was to receive only common stock.

We have already considered and rejected petitioners' argument that Weeden obtained an equity interest in WAI in exchange for the subject payments. Similarly, we find no support in the record for petitioners' argument that WAI issued a second class of stock in connection with the subject payments. Petitioners' argument fails to explain what the stock purchase agreement or the other documents prepared for CPI have to do with the "governing provisions" of WAI, and it fails to take into account the fact that those documents were never executed. Therefore, we find that petitioners have not proven that Weeden obtained an equity interest in WAI in 1987, or that WAI issued more than one class of stock in that year. Accordingly, we find

that petitioners have not proven that WAI ceased to be a small business corporation, as defined by section 1361(b), and they have not proven that WAI's S corporation election terminated in 1987.

We note that petitioners' post-trial brief correctly asserts that the subject advances do not satisfy the straight debt safe harbor requirements of section 1361(c)(5). Unlike respondent, however, we do not construe petitioners' assertion as an argument that any transaction which does not satisfy these requirements necessarily constitutes a second class of stock. If petitioners had made such an argument, we would reject it for the reasons advanced by respondent. However, as we read their brief, petitioners' point is simply that the subject advances do not fit within the safe harbor provision, and we must review the "governing provisions" of the S corporation to determine whether all outstanding shares of WAI's stock confer identical rights to distribution and liquidation proceeds. Sec. 1.1361-1(l)(2)(i), Income Tax Regs. As discussed above, the "governing provisions" on which petitioners base their argument that WAI issued more than one class of stock are documents that relate to CPI, not WAI, and are documents that were never executed. Thus, we

reject petitioners' argument that WAI issued more than one class of stock.

We also note that petitioners argued at trial that CPI was a wholly owned subsidiary of WAI, thus violating section 1362(b)(2)(A), which disqualifies any member of an affiliated group from making an S corporation election. In their post-trial briefs, petitioners argue that CPI was a "division of" WAI. However, they fail to mention the argument that CPI was a subsidiary of WAI. Accordingly, we deem petitioners to have abandoned the latter argument. Rule 142(a); Calcutt v. Commissioner, 84 T.C. 716, 721-722 (1985); German v. Commissioner, T.C. Memo. 1993-59, affd. without published opinion 46 F.3d 1141 (9th Cir. 1995).

In view of our finding that WAI's S corporation election was not terminated during the years in issue, we need not consider the first of the two issues raised in respondent's amended answer that petitioners are prohibited by the duty of consistency from asserting that WAI's S corporation election was terminated. The second issue raised in respondent's amended answer is respondent's alternative position that, if Weeden's advances are found to be loans to WAI, then the loans were forgiven in 1988 and constitute gross income to WAI in that year. This issue became moot by reason of the stipulation of settled

issues that was filed in the related cases and by reason of our finding that the advances were not loans to WAI.

Validity of the Notices of Deficiency for 1989

In their opening brief, petitioners argue that the notices of deficiency issued for taxable year 1989 should be dismissed because they do not explain how the deficiencies determined for that year were calculated, other than by stating that the deficiencies result from a carryforward of the 1988 redetermination. Petitioners also argue that respondent failed to "offer a single witness, including the revenue agent who prepared the Notices, to explain how they were calculated." Petitioners maintain that because respondent failed to present such testimony, the burden of proof with regard to the 1989 deficiencies shifted to respondent.

We disagree. Both notices of deficiency adequately explain respondent's determination of deficiencies for 1987 and 1989. Petitioners bear the burden of proving that respondent's determination of a deficiency is incorrect. Rule 142(a). Petitioners have not met this burden, and have not shown any reason why the burden should be shifted to respondent.

Additions to Tax and Penalty

In the notices of deficiency, respondent determined that petitioners are liable for the additions to tax under sections 6653(a)(1)(A) and 6661 with respect to their 1987 returns, and for the penalty under section 6662(a) with respect to petitioners' 1989 returns.  We note that sections 6653 and 6661 were repealed effective for returns due after December 31, 1989.  See Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(c)(1) and (2), 103 Stat. 2399.  During 1987, section 6653(a)(1)(A) imposed an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment was due to negligence or disregard of rules or regulations. Also during 1987, section 6661 imposed an addition to tax for substantial understatement of income tax for any taxable year equal to 25 percent of the underpayment attributable to the understatement.  Section 6662 imposes a penalty equal to 20 percent of the portion of an under-payment of tax which is attributable to negligence or disregard of the rules or regulations, or to a substantial understatement of income tax.  Sec. 6662(b)(1) and (2).

Petitioners bear the burden of proving that they are not liable for the additions to tax and penalty as determined by respondent.  Rule 142(a); <u>Axlerod v. Commissioner</u>, 56 T.C. 248, 258-259 (1971).  Petitioners did not take issue with respondent's determination in their pleadings or post-trial briefs and have presented nothing to show that respondent's determinations are erroneous. Accordingly, we sustain respondent's determination and find that petitioners are liable for the additions to tax under sections 6653(a) and 6661, and for the penalty under section 6662.

In light of the foregoing, and reflecting concessions,

<u>An appropriate order will be issued denying respondent's motion for leave to file amendments to answers and to conform the pleadings to the proof and decisions will be entered under Rule 155</u>.