T.C. Memo. 2000-1


UNITED STATES TAX COURT


LARRY CHARLES MILLER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 24610-96, 3155-98.          Filed January 3, 2000.


<u>Larry Charles Miller</u>, pro se.

<u>Michael D. Baker</u>, for respondent.


MEMORANDUM OPINION


RUWE, <u>Judge</u>:  In these consolidated cases, respondent determined deficiencies in petitioner's Federal income taxes and accuracy-related penalties as follows:

|  |  |  | Accuracy-related Penalty |
| <u>Docket No</u>. | <u>Year</u> | <u>Deficiency</u> | <u>Sec. 6662(a)</u> |
| 24610-96 | 1993 | $78,220 | $15,644 |
| 3155-98 | 1994 | 80,056 | 16,011 |

After concessions,[1] the issues for decision are: (1) Whether petitioner is entitled to various deductions claimed on Schedule C in 1993 and 1994; (2) whether petitioner is entitled to claim a Schedule A deduction of $5,280 in 1994; and (3) whether petitioner is liable for the accuracy-related penalty under section 6662(a)[2] for the taxable years 1993 and 1994.

Some of the facts have been stipulated[3] and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Philadelphia, Pennsylvania, at the time he filed his petition.

---

[1]Initially, respondent disallowed $220,717 and $224,480 in Schedule C deductions due to lack of substantiation for the tax years 1993 and 1994, respectively. See appendix A. The parties have agreed on the amount of certain of these deductions in their stipulation. Respondent now agrees that petitioner substantiated $119,347 and $94,499 of the Schedule C deductions for 1993 and 1994, respectively. See appendix B.

Petitioner concedes that he received interest income of $16 from Minnesota Mutual Life Insurance Co. in 1993, none of which was reported on his tax return. Additionally, the parties agree that petitioner can deduct $10,830 under Schedule A for charitable donations made in 1993, not $14,571 under Schedule C as initially claimed and disallowed. Finally, the parties agree that petitioner is entitled to claim the following 1994 Schedule A itemized deductions: $169 for State taxes and $12,843 for charitable contributions.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]Stipulation No. 65 incorrectly indicates that Exhibits 43-J through 68-J, which are copies of 26 of petitioner's checks, totaled $12,736. The total amount is $5,767.43.

## Background

During 1993 and 1994, petitioner was engaged in the practice of law. Petitioner operated two law offices that were located at 5526 Spruce Street, Philadelphia, Pennsylvania, and 4429 Westfield Avenue, Pennsauken, New Jersey.

Petitioner reported 1993 and 1994 gross receipts and expenses associated with his law practice on Schedules C. On his 1993 Schedule C, petitioner reported gross receipts of $226,739.09 and deductions of $220,717. On his 1994 Schedule C, petitioner reported gross receipts of $244,569 and expenses of $224,480.

In August of 1998, petitioner was notified that these cases were set for the trial session starting on January 11, 1999. The notice contained the Standing Pre-Trial Order requiring petitioner to exchange documents expected to be utilized at trial with respondent at least 15 days prior to the first day of the trial session. Notwithstanding those explicit instructions, petitioner neglected to timely present all such documents. As a result, we excluded certain documents from evidence.

For convenience, we will combine the facts regarding each issue with our opinion.

## Discussion

Deductions are a matter of legislative grace, and the burden of showing the right to deductions is on the taxpayer.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

A.  Schedule C Deductions

The Schedule C deductions that remain in issue fall into four broad categories:  (1) Office expenses; (2) meals and entertainment; (3) repairs and maintenance; and (4) parking/tolls.

### 1.  Office Expenses

Total office expense deductions at issue are $73,294.50 for 1993, and $23,815.97 for 1994, and fall into two broad categories:  (a) Office expense deductions allegedly taken to offset improperly reported income items; and (b) other office expenses.

#### a.  Office Expense Deductions Allegedly Taken To Offset Improperly Reported Income Items

The first issue is whether petitioner can deduct $72,516 and $15,956.97 in office expense deductions allegedly taken to offset improperly reported income items in 1993 and 1994, respectively. Petitioner argues that he included nontaxable items in gross receipts and then deducted the same amount on Schedule C as an office expense because the items included in income were nontaxable.  From this, we conclude that petitioner acknowledges

that he did not really have $72,516 and $15,956.97 in office expenditures as he claimed on his returns and that his claimed office expense deductions were false.

According to petitioner, the sources of nontaxable items that he included in his 1993 gross receipts are: $6,250 in life insurance proceeds from Cigna,[4] $1,266 in life insurance proceeds from Minnesota Life Insurance,[5] and $65,000 in loan proceeds from Sinh Hang.[6] Additionally, petitioner asserts that the sources of nontaxable items that he included in his 1994 gross receipts are:

---

[4]Petitioner produced a copy of a death certificate for Ms. Aretha Payne and a life insurance certificate schedule issued by the Life Insurance Co. of North America reflecting a policy limit of $25,000 on the life of Aretha Payne. Petitioner testified that upon the death of his mother, he and his three siblings shared the proceeds from the $25,000 policy equally. However, the life insurance certificate does not indicate who benefits under the policy.

[5]Petitioner testified that he received $1,266 from Minnesota Life Insurance.

[6]Petitioner produced a copy of a loan agreement for $65,000 dated Nov. 1, 1993. The loan agreement consists of a one-page, unnotarized document between petitioner and one of his clients, Sinh Hang. While the agreement does indicate a willingness on the part of Mr. Hang to lend petitioner $65,000 in 1993, it does not demonstrate that petitioner received $65,000 in loan proceeds. Petitioner did not provide a deposit slip or bank statement, nor did he provide a cash receipts journal entry reflecting that the loan, if received, was included in gross receipts.

$6,956.97 in auto insurance proceeds from State Farm Insurance[7] and $9,000 in loan repayment proceeds from his sister.[8]

Petitioner has not convinced us that he reported nontaxable items in gross receipts. Petitioner testified that he kept a cash receipts journal and bank statements to determine his gross receipts. Petitioner did not provide a copy of his cash receipts journal or any bank statements to show that nontaxable items were in fact included in his gross receipts. Furthermore, petitioner is a tax lawyer[9] who testified that he knows that some items, particularly repayment of loans, are not includable in gross income. In light of petitioner's knowledge of the tax laws and his experience in preparing tax returns, we do not find his explanation credible. Therefore, on the basis of this record, we

---

[7]Petitioner produced a check, drawn on his account, payable to "Lumpkins" in the amount of $6,956.97. The check contained a notation indicating that it was for "car repair/State Farm". Petitioner testified that he received $6,956.97 from State Farm Insurance and then paid Lumpkins, an auto repair shop, the exact same amount. However, petitioner did not provide a copy of the draft from State Farm Insurance.

[8]Petitioner provided a check payable to "Larry Miller Attorney-at-Law" for $9,000, with the notation, that in part indicated, that it was for "repayment of loan". The check was drawn on the High Fashions' account in Memphis, Tennessee. Petitioner testified that his sister issued the check.

[9]Petitioner testified that he has been practicing law since 1985, and, as part of his practice, he prepares tax returns including Forms 1040 with Schedules C.

find that petitioner has not proven that he is entitled to the $72,516 and $15,956.97 in office expense deductions.

### b. Other Office Expenses

Other office expenses consist of deductions taken for: (I) storage facility expenses; (II) the purchase of oriental rugs and art; and (III) language lessons.

### (I). Storage Facilities

Petitioner claimed storage facility expenses of $478 in 1993 and $409 in 1994. Petitioner testified that in 1993 he closed an office at Ventnor, New Jersey, and then stored the office furniture at Access Storage.[10] To substantiate his deductions, petitioner provided copies of checks totaling $478.50[11] in 1993 and $409.50[12] in 1994. The checks were drawn on the checking account that petitioner maintains for his law practice: "Larry Charles Miller, Attorney at Law". However, petitioner also testified that in the middle of 1994 he moved to a new house and that he also paid household expenses and personal expenses such as credit card debts and automobile expenses from the same

---

[10]The deductions in 1993 and 1994 allegedly relate to the same office closing.

[11]This amount consists of one check payable to Access Black Horse for $132, and two additional checks payable to Black Horse Self Storage for $165 and $181.50.

[12]This amount consists of checks payable to Black Horse Storage and Black Horse Pike Storage for $181.50 and $228, respectively.

checking account.  In fact, other than an escrow account, petitioner did not maintain any other checking account.

Assuming that all the checks in fact relate to storage expenses, we have only petitioner's uncorroborated testimony that the expenses were incurred in carrying on a trade or business as opposed to personal expenses incurred in anticipation of, and during, his change of personal residence.  Petitioner testified that he was requested to provide respondent with information that would serve to substantiate his claimed office expenses.  However, petitioner also testified that he did not attempt to contact Black Horse Self Storage to secure any documentation, even though he signed a lease agreement with the storage facility company.  Based on this record, petitioner has not met his burden and established his entitlement to these claimed deductions.

### (II).  <u>Oriental Rugs and Art</u>

The third office expense at issue relates to items allegedly purchased by petitioner in 1994.  Petitioner testified that he purchased three used oriental rugs for $6,050 and art for $1,400 and then placed these items in his Pennsauken, New Jersey and Philadelphia, Pennsylvania offices.  Petitioner produced copies of two checks, one payable to Togar, Inc., for $6,050 and one payable to Lucien Crup for $1,400.  Neither check contained a notation regarding its intended purpose.

Petitioner has not proven that these items were purchased and used in his place of business, as opposed to the new home that he purchased in the same year. Petitioner did not provide any invoices which might have confirmed that Togar, Inc., sells oriental rugs and that Lucien Crup sells artwork, and shown a delivery address or the address of petitioner's offices. Given petitioner's experience as a tax attorney and the amount of the deduction at issue, we would have expected petitioner to have such evidence. Petitioner has not proven that he is entitled to the claimed deduction.[13]

### (III). Language Lessons

The final office expense at issue is a claimed deduction of $300 in 1993 for language lessons. Petitioner testified that more than 90 percent of his clients are Asian, and as a result, he took lessons on Chinese, specifically Cantonese and Mandarin. To substantiate petitioner's claim, he provided copies of three checks issued to Fang Huang. Petitioner's creditablity is suspect in light of the other explanations he has provided. Petitioner has not proven that he is entitled to this deduction.

---

[13]We note that even if the expenses were substantiated, they appear to be capital in nature.

2. <u>Meals and Entertainment</u>

The next issue is whether petitioner can deduct meals and entertainment expenses of $10,270 in 1993 and $6,242 in 1994.[14] Petitioner argues on brief that he failed to produce adequate records to substantiate his expenses because the records were lost in the process of closing an office and moving to another one.[15]

Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred in carrying on a trade or business.  However, no deduction is allowed under section 162 with respect to any traveling expense, including meals while away from home, or for any entertainment expenses, unless the taxpayer meets strict substantiation requirements.  See sec. 274(d); sec. 1.274-5T(b) and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46016 (Nov. 6, 1985).  Section 274(d) provides that no deduction will be allowed for any traveling expense,[16] or for any activity which is generally considered to constitute

---

[14]Petitioner deducted $10,270 in 1993 and $6,242 in 1994, and respondent disallowed both deductions.  In order to substantiate his deductions, petitioner submitted checks drawn in 1993 and 1994 totaling $12,286.76 and $9,492.32, respectively.

[15]Petitioner testified that he was unable to provide receipts for the expenses because they were lost in the process of closing an office and moving to another office.  Petitioner testified that he moved his office in 1993.

[16]See sec. 274(d)(1).

entertainment,[17] unless the taxpayer maintained records sufficient to establish (1) the amount of each expense, (2) the time and place of the activity, (3) the business purpose of the activity, and (4) the business relationship of the person entertained to the taxpayer.

Where the taxpayer establishes that the failure to produce adequate records is due to the loss of such records through circumstances beyond the taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty, the taxpayer shall have the right to substantiate a deduction by reasonable reconstruction of his expenditures. See sec. 1.274-5(c)(5), Income Tax Regs. The loss of records in connection with a move is not a casualty beyond the taxpayer's control. See Gizzi v. Commissioner, 65 T.C. 342, 345-346 (1975); see also Olivares v. Commissioner, T.C. Memo. 1983-649.

Even if the Court were to view the loss of petitioner's records as a casualty, petitioner has failed to fulfill the additional requirement of reasonably reconstructing records. In an effort to reconstruct his records, petitioner provided copies of several checks payable to Diners Club, Citibank, MBNA, American Express, and one check payable to Claire Bixby. Most,

---

[17]See sec. 274(d)(2).

but not all, of the checks[18] contained a notation indicating that they were for either travel, entertainment, or travel and entertainment. However, petitioner did not provide any information regarding the amount of each expense, the time and place of each activity, the business purpose of the activity, or petitioner's business relationship to the person entertained. Petitioner did not produce copies of the receipts and/or monthly account statements from Diners Club, Citibank, MBNA, or American Express. Rather, petitioner simply asserts that it would have been impossible to reconstruct his meals and entertainment expenses without receipts. We sustain respondent's disallowance of these deductions.

### 3. Repairs and Maintenance

Petitioner claims repair and maintenance expenses of $396.40 in 1993 and $5,767.43 in 1994. Petitioner testified that his office incurred water damage, and in order to minimize the cost

---

[18]The checks in 1993 totaled $12,286.76, while petitioner reported total travel, meals, and entertainment expenses of $18,797 before application of the limit on meals and entertainment expenses under sec. 274(n). Additionally, the checks in 1994 totaled $9,492.32, while petitioner reported total travel, meals, and entertainment expenses of $16,042 before application of the limit on meals and entertainment expenses under sec. 274(n). Petitioner offered no explanation for the difference in the amounts reported and the checks provided to substantiate his expenses.

of repairs, he purchased the materials himself and hired individuals to provide the labor.

To substantiate the deduction for 1993, petitioner provided copies of two checks. One check was for $100 and payable to an individual, while the other check was for $296.40 and payable to a building and supply store. To substantiate his deductions for 1994, petitioner provided copies of 26 checks totaling $5,767.43, all payable to businesses such as Hechinger, Home Depot, and Providence Lighting. All of these businesses sell goods which can be used to repair or renovate an office or a personal residence.[19]

All the checks were drawn on the same checking account that petitioner used to pay personal and business expenses. None of the checks contained any notations identifying their intended purpose, and petitioner did not provide any invoices from the persons who did the repair work. In the case of taxable year 1994, petitioner did not indicate what his cost of labor was or provide a check payable to a contractor or individual for the repair work allegedly done.

In short, we cannot tell from the record whether petitioner bought several fixtures for his new home or whether he in fact repaired one of his offices. Petitioner has not met his burden

---

[19]Petitioner testified that he had some renovation work done on his Pennsauken, New Jersey, office in 1993.

of proving that he is entitled to the claimed deduction for either year.

### 4. Parking/Tolls

Petitioner claimed a deduction for parking/tolls of $2,978 for the 1993 taxable year. Neither petitioner nor respondent conceded the issue in their stipulations, or argued the point in brief or at trial. However, petitioner has the burden of proof. See Rule 142(a). Accordingly, in the absence of any evidence offered by petitioner with respect to this issue, respondent's determination is sustained. See Rule 149(b).

## B. Mortgage Points

Petitioner claims he is entitled to a $5,280 deduction under Schedule A for home mortgage points in 1994. Respondent disallowed petitioner's deduction for mortgage points due to lack of substantiation.

There is no evidence to substantiate petitioner's deduction for mortgage points in 1994. As a result, we sustain respondent's determination regarding this deduction.

## C. Accuracy-Related Penalty

The final issue is whether petitioner is liable for the accuracy-related penalty under section 6662(a) for 1993 and 1994. Section 6662(a) imposes a penalty in an amount equal to 20 percent of the portion of the underpayment of tax attributable to a taxpayer's negligence, disregard of rules and regulations, or

any substantial understatement of income tax.  See sec. 6662(a),(b)(1), and (b)(2).

Section 6662(c) provides that the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations.  The Commissioner's determination that a taxpayer was negligent is presumptively correct, and the burden is on the taxpayer to show lack of negligence.  See Axelrod v. Commissioner, 56 T.C. 248, 258 (1971).  An understatement of tax is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000.  See sec. 6662(d)(1)(A)(i) and (ii).  The accuracy-related penalty will apply unless petitioner can demonstrate that there was reasonable cause for the underpayment and that he acted in good faith with respect to the underpayment.  See sec. 6664(c)(1).

On the basis of the entire record, we conclude that petitioner has not established that there was reasonable cause and that he acted in good faith with respect to the underpayment of tax.  Petitioner did not meet his burden of proving that he was not negligent.  Respondent's deficiency determination exceeds 10 percent of the amount required to be shown on the return and is more than $5,000.  We, therefore, hold that petitioner is

liable for an accuracy-related penalty of 20 percent of the entire underpayment for each year.

Decisions will be entered

under Rule 155.

APPENDIX A

Schedule C Deductions Initially Disallowed by Respondent

|  | 1993 | 1994 |
|---|---|---|
| Advertising | $838 | $860 |
| Bad debt | 17,375 | 18,492 |
| Car & truck | 3,360 | 3,360 |
| Insurance | 7,174 | 1,478 |
| Mortgage | -0- | 9,561 |
| Office expense | 98,939 | 99,403 |
| Repairs and maintenance | 3,014 | 5,224 |
| Supplies | 5,922 | 2,001 |
| Taxes | 100 | 947 |
| Travel | 5,960 | 3,557 |
| Meals & entertainment | 10,270 | 6,242 |
| Utilities | 5,187 | 5,751 |
| Wages | 31,627 | 34,980 |
| Other expenses | -0- | 32,624 |
| Postage | 2,439 | -0- |
| Filing fees | 3,574 | -0- |
| Donations | 14,571 | -0- |
| Telephone | 7,389 | -0- |
| Parking tolls | 2,978 | -0- |
| Amounts disallowed | 220,717 | 224,480 |

APPENDIX B

Schedule C Deductions Allowed by Respondent

|  | 1993 | 1994 |
|---|---|---|
| Advertising | $455 | -0- |
| Bad debt | [1]-0- | -0- |
| Insurance | 3,883 | $803 |
| Office expense | [2]39,249 | 22,165 |
| Repairs and maintenance | 9,245 | 7,111 |
| Supplies | 5,051 | 2,460 |
| Taxes | 266 | 1,519 |
| Utilities | 5,747 | 3,967 |
| Wages | 45,957 | 44,690 |
| Postage | 622 | 1,114 |
| Filing fees | 4,526 | 1,645 |
| Natural gas |  | 1,705 |
| Telephone | 4,346 | 7,320 |
| Total | 119,347 | 94,499 |

[1]Petitioner incorrectly deducted a bad debt expense of $17,375 in 1993 on Schedule C. The parties agree that petitioner is not entitled to the deduction and that the items petitioner claimed as a bad debt expense are deductible as office expenses.

[2]This consists of $21,874 in expenses substantiated by petitioner and the $17,375 bad debt expense reclassified as an office expense and allowed as a deduction.